Our next case on the call the docket is agenda number four case number one one three nine zero eight and ray B.C.P. Council for the appellate. Good morning. Please support counsel. I'm assistant attorney general Catherine Saunders for the people. The appellate court in this case held that the people had no right to appeal the trial court's order suppressing juvenile confession. As a result, the trial court's erroneous suppression order will evade review entirely. And because this result is inconsistent with the policies underlying the juvenile court act, the people asked this court to exercise its undisputed authority over the scope of interlocutory appeals to provide the people the right to an appeal of such an order in a juvenile case. At the outset, I want to clarify two important points. We're not asking this court to amend its rules. What we're doing is simply asking this court to construe the words criminal cases as it appears in rule 604A1 to include juvenile proceedings for this reason only. We recognize that people continue to recognize the unique nature of juvenile proceedings. We're in no way trying to equate juvenile and criminal proceedings. But we are saying that although they're not criminal in nature, following the 1998 amendments to the juvenile court act, juvenile proceedings are sufficiently similar to criminal proceedings, at least in this respect, that the people should have the same right to appeal order suppressing evidence in juvenile cases. For example, the juvenile court act provides that the purpose of the act is to protect citizens from juvenile crime and to hold the offender directly accountable for their actions. And this court recognized in Taylor, People v. Taylor, that the shifts and the changes brought about by the 1998 amendments to the juvenile court act represented a fundamental shift from the singular goal of rehabilitation to include protecting the public, again, in accordance with the policy of the act, and holding juvenile offenders accountable for their actions. This allowing interlocutory appeals of suppression orders in juvenile cases advances the policy goals of the juvenile court act because it acknowledges that juvenile crime has become an issue of public importance and that the people have an interest in pursuing a delinquency finding. It's undisputed that the need for an interlocutory appeal in a juvenile case is similar to that in a criminal proceeding. As in criminal cases, the people are not permitted to appeal a judgment of acquittal. As in criminal cases without an interlocutory appeal, as I discussed, the issue will evade review entirely. And as in criminal cases, erroneous suppression orders have the effect of frustrating the primary purpose of the trial, which is to determine the truth of the allegations. In fact, the need for an appeal, an interlocutory appeal in a juvenile proceeding, may even be greater than that in a criminal case, given the primary goal of juvenile proceedings to rehabilitate the juvenile offender. If, in fact, there is an erroneous suppression order and the juvenile is, as a result, essentially denied his opportunity and services for rehabilitation as a juvenile, he may go on to commit future crimes and become involved in the adult criminal system. It's also the case that many other states, other jurisdictions, provide for interlocutory appeals of juvenile suppression orders. And this suggests that these laws allowing juvenile suppression appeals strike the appropriate balance between the juvenile's rights and the people's rights, and also suggests that any delay occasioned by such appeals are at least manageable. In most of the cases, most of the courts, by rule or by decision, require that the people certify that the appeal is not taken for purposes of delay and to certify that the ruling substantially impairs their ability to prosecute the appeal. In sum, then, juvenile proceedings are sufficiently similar to criminal proceedings in this respect, such that this Court should allow the people to appeal juvenile suppression rulings under Rule 604A1 and construe criminal cases, as it appears in that rule, to include juvenile proceedings. Thank you, Counsel. Counsel for the appellee. Good afternoon. May it please the Court. Counsel, Gabrielle Green, Assistant Appellate Defender of the Office of the State Appellate Defender's Office, 3rd District, on behalf of the appellee, BCP. Here the issue is whether or not the State has the right to appeal interlocutory orders suppressing evidence in juvenile cases, and the fact is that they don't. In its brief, the State concedes that, as the laws are currently written, the State does not have this right. But by conceding this, the State wants to suggest that a discussion regarding the plain language of the rule isn't warranted. But the plain language of the rules are specifically important. This Court does have jurisdiction over the scope of interlocutory appeals, but in the juvenile rules, in Rule 602, or 660A, where this Court indicates that final judgments or final determinations can be governed by the rules that are applicable to criminal cases, that language is important. This Court has determined that interlocutory appeals are only valid in very limited circumstances in Rule 660. Therefore, the fact that the Court chose not to include orders suppressing evidence is significant. On the plain reading, Ms. Green and Ray G., a 2001 case out of this Court, we held that compliance with Rule 604D was required in juvenile proceedings, even though the rule didn't expressly say so. Couldn't we do something similar here with respect to 604A1? I think, and Ray G. is different, there was a final determination in that case, and the incorporation of 604D was not done by the language of 604D itself, but by the incorporation of 604D by 660A1. It's different from what we're looking at here. Also in that case, we're dealing with equal protection for the juvenile, and 660A, in that sense, provides or extends the procedural rights that are given to criminal defendants. It extends that right to juveniles, so I think it is different from the case that we're looking at here. Does the current rule, though, result in certain orders, motions to suppress in juvenile cases, being unreviewable? Certain. That is possible. And what justification or rationalization, what's positive about that, if anything? That I wouldn't know. That's the proposal that, or what I suggested in our brief, or what the respondent suggested in its brief, that there are proponents and opponents of allowing such appeals that could be spoken, and this court could hear from those individuals who may have arguments on that specific point. But it's not that the state is only, state's the only party that's, or the state has no benefit. The juveniles also, there's also situations in which the juvenile can't appeal, like the juvenile doesn't have a right to post-conviction appeal. So there are instances in which there may be unjust results from the, from a respondent's point of view as well. The state suggests that there's these policy issues that drive, that should drive this court's interpretation of Rule 604 for A1. And typically policy drives the creation of law, and they're posing something that typically doesn't seem to be the trend in this court. The fact that other jurisdictions may allow for such appeals does indicate that this sort of discussion is more right for the Rule 3 rule-making process, where some states may only allow these appeals where there is a habitual or a violent offender. Some states require the level of the evidence suppressed, that it must be fatal. Some require it to be substantially, to substantially impair the prosecution. There's a lot of discussion that would need to be resolved, or I think that is important, that proponents and opponents of such an amendment or such an interpretation of the current rules would present to the court that I think are right for review as well. Additionally, the respondent would suggest that it's a better practice to keep the rules very explicit versus interpreting the rules through case law. By interpreting the rules through case law such as this, it just leads to more cases on the interpretation of the law. Typically when there's a jurisdictional statement allowing for jurisdiction of the court to hear a particular type of case, we're led to a particular rule. If we were to resolve this case by merely interpreting or interpretation through the case law versus amending the laws or amending the rules, it just goes against what this case, this court has done in the past. One of the main concerns here with juvenile cases is, or juvenile appeals, is the issue of delinquency. And there's the idea that the courts want there to be swift justice, or the courts want the remedies for juvenile cases to be swift. Allowing these interlocutory appeals will add to delay, specifically in this case, which the order was initially issued in 2010. And here we are in 2013 where this case is still open. And what the potential of happening is that a juvenile may reach the age of majority and a case is still pending before the court and without resolution. Are there any more questions? Apparently not. Thank you. Thank you very much. People are not asking this court to ignore the plain language of the rules, 604A, 660, 662. Rather, as I said, we're asking this court to read, in criminal cases in 604A1, to construe it to the extent that it is necessary to encompass juvenile suppression orders. That's all the people are asking. As for delay, if this court were concerned with delay, I know my opponents raised the issue. This court certainly could provide for interlocutory appeals in a matter akin to Rule 311 that applies to abuse and neglect cases in juvenile cases. If there are no further questions, the people would ask that this court reverse the appellate court's judgment and remand to that court for further proceedings and a determination of whether the trial court erroneously suppressed BCP's confession. Thank you. Case number 113908, NRA BCP is taken under advisement as agenda number 4. Mr. Marshall, the Supreme Court stands adjourned until tomorrow morning, Wednesday, March 13, 2013 at 9 a.m.